UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY FRANZ, et al,

      Plaintiffs,                              Hon. Mark A. Goldsmith

v                                                No. 21-12871

OXFORD COMMUNITY SCHOOLS,
TIMOTHY THRONE, STEVEN WOLF,
RYAN MOORE, COUNSELOR #1,
COUNSELOR #2, STAFF MEMBER,
TEACHER #1 and TEACHER #2,

      Defendants.
_____/

| | |
|---|---|
| GEOFFREY N. FIEGER (P30441) | TIMOTHY J. MULLINS (P28021) |
| JAMES J. HARRINGTON (P65351) | KENNETH B. CHAPIE (P66148) |
| ROBERT G. KAMENEC (P35283) | JOHN L. MILLER (P71913) |
| NORA Y. HANNA (P80067) | ANNABEL F. SHEA (P83750) |
| MILICA FILIPOVIC (P80189) | *Giarmarco, Mullins & Horton, P.C.* |
| *Fieger, Fieger, Kenney & Harrington, P.C.* | Attorneys for Defendants, Oxford |
| Attorneys for Plaintiffs | Community Schools, Timothy Throne, |
| 19390 West Ten Mile Road | Steven Wolf and Ryan Moore |
| Southfield, MI 48075 | 101 W. Big Beaver Road, 10th Floor |
| (248) 355-5555 | Troy, MI 48084-5280 |
| g.fieger@fiegerlaw.com | (248) 457-7020 |
| j.harrington@fiegerlaw.com | tmullins@gmhlaw.com |
| r.kamenec@fiegerlaw.com | kchapie@gmhlaw.com |
| n.hanna@fiegerlaw.com | jmiller@gmhlaw.com |
| m.filipovic@fiegerlaw.com | ashea@gmhlaw.com |

**DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING THE
CONCLUSION OF THE PARALLEL CRIMINAL CASES,
CASE NOS. 21-006611-FY, 21-006652-FY, AND 21-006651-FY**

# TABLE OF CONTENTS

ISSUE PRESENTED AND MOST CONTROLLING AUTHORITY ................3

FACTS ..................................................................................................................4

1.  This Lawsuit ................................................................................................4

2.  The Parallel Criminal Cases Pending in the 52-3rd District Court ............6

3.  The Evidence Sought by Plaintiffs from Law Enforcement Relating to the Parallel Criminal Cases ..................................................................7

4.  Plaintiffs' Ability to Obtain the Desired Evidence from Law Enforcement After the Conclusion of the Criminal Cases ........................12

5.  The High Likelihood that there will be Companion Civil Cases Following the Conclusion of the Parallel Criminal Cases ........................13

LAW AND ARGUMENT ..................................................................................14

I.  This Court Should Use Its Inherent Power to Stay this Case Pending the Outcome of the Parallel Criminal Cases Given that a Stay is in the Best Interest of the Parties to this Case, the Parties the Criminal Cases, and the Judiciary..........................................................................14

CONCLUSION ..................................................................................................19

**ISSUE PRESENTED AND MOST CONTROLLING AUTHORITY**

**Issue One:** Should this Court use its inherent authority to stay this case pending the conclusion of the parallel criminal cases—Case Nos. 21-006611-FY, 21-006652-FY, and 21-006651-FY—given that (1) going forward with this case would cause substantial hardship to Defendants as there is a high likelihood that additional civil cases will be filed after the conclusion of the criminal cases, (2) a stay would promote this Court's interest in judicial economy given the fact that numerous attorneys have called indicating that they will be filing claims arising out of this incident in either Federal or State Court, (3) a stay is in the public's interests in seeing justice done in the parallel criminal case, as it would prevent unwarranted interference with the criminal prosecutions, and (4) a stay is in the best interest of the general public that have an interest in law enforcement and justice? **YES**

**Most Controlling Authority:**

- *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)("[T]he power to stay proceedings is identical to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.")); *Ohio Envtl. Council v. U.S. Dist. Court, S.*

3

*Dist. of Ohio*, E. Div., 565 F.2d 393, 396 (6th Cir. 1977); *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010).

- *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)(holding that district courts have "broad discretion in determining whether to stay a civil action while a criminal action is pending or impending.")).

## FACTS

**1.     This Lawsuit**

Plaintiffs filed the instant lawsuit on December 10, 2021 as a result of the November 30th incident that took place at Oxford High School. Instead of respecting the mourning of the Oxford Community as they attended the last scheduled funeral for the victims, Fieger decided to hold a press conference advertising his services for future civil litigation and announcing his intention to effectively bankrupt Oxford Community Schools with his claimed $200,000,000 lawsuit.[1]

There is no dispute that this case is in its infancy. Defendants only recently filed their Answer to the Amended Complaint on January 21, 2022. The parties have not yet conferred under Rule 26(f) or created a discovery plan. In fact, the parties are not yet permitted to engage in discovery at this early stage under the Federal Rules of Civil Procedure.

---

[1] See https://www.freep.com/videos/news/local/michigan/detroit/2021/12/10/oxford-school-district-lawsuit-attorney-geoffrey-fieger/6451844001/

4

On January 20, 2022, the parties appeared before this Court to present oral arguments on Defendant Moore's Motion to Dismiss and Plaintiffs' *ex parte* Motion for Leave to Issue Rule 45 Subpoenas. (See ECF No. 13; ECF No. 14; ECF No. 28). During the hearing, Defense counsel suggested that this case should be stayed pending the conclusion of the parallel criminal cases. Defense counsel explained that a stay is necessary given that Plaintiffs are seeking early discovery that could interfere with the criminal cases. Defense counsel stated to the Court that numerous attorneys have called and indicated their intention to file lawsuits on behalf of other individuals seeking recovery from the school district as a result of this same incident. Defense counsel suggests that this Court stay the instant proceeding in the interests of judicial economy, understanding that additional suits will be filed in Federal and/or State Court. Plaintiffs' counsel indicated its opposition to any coordination of the numerous suits, which will certainly be filed. In response, this Court entered an Order requesting that the parties brief the issue. (ECF No. 30). Defendants are now filing the instant Motion to Stay.

Undersigned counsel certifies that counsel communicated in writing with opposing counsel on January 24, 2022, explaining the nature of the relief to be sought by way of this Motion and seeking concurrence in the relief. Opposing counsel expressly denied concurrence.

## 2.     The Parallel Criminal Cases Pending in the 52-3rd District Court

On November 30, 2021, E.C. was arrested following the devastating school shooting that occurred at Oxford High School. On December 1, 2021, E.C. was charged with one count of terrorism causing death, four counts of murder in the first degree, seven counts of assault with intent to murder, and twelve counts of felony firearm possession. (Case No. 21-006611-FY). To protect the integrity of the criminal case, the 52-3 District Court entered a protective order expressly forbidding the disclosure of certain sensitive information to plaintiff attorneys, such as Fieger, for use in civil litigation. (ECF NO. 13-3, PageID 258-261). On January 7, 2022, E.C. waived his right to preliminary examination and was bound over for trial.

The Oakland County Prosecutor directed counsel for the Defendants to avoid releasing information related to the within matter so as to prevent any interference with the ongoing criminal proceedings. Counsel for Oxford indicated that it would abide by this direction unless ordered to the contrary by the Court.

On December 3, 2021, E.C.'s parents, Jennifer and James Crumbley, were each charged with four counts of involuntary manslaughter for their participation in the facts giving rise to the November 30th incident (Case Nos. 21-006652-FY and 21-006651-FY). Jennifer and James Crumbley's preliminary examination is scheduled for February 8, 2022. During the preliminary examination, the prosecutor will submit evidence supporting that it was more likely than not that Jennifer and

6

James Crumbley committed the above charged crimes. During this examination, the prosecution will likely submit evidence and call several witnesses. The evidence presented during this hearing will likely overlap with some of the information Plaintiffs intend to seek through civil discovery.

**3.     The Evidence Sought by Plaintiffs from Law Enforcement Relating to the Parallel Criminal Cases**

The parallel criminal cases arise from the same facts as this lawsuit. As such, there is a substantial overlap in the relevant evidence for the criminal and civil cases. This fact is not in dispute as evidenced by Plaintiffs' attempt to obtain all evidence relating to the criminal cases through the broad reach of civil discovery after receiving notice from the Oakland County Prosecutor that the evidence was exempt from disclosure under the Freedom of Information Act (FOIA)[2]. (ECF NO. 13; See ECF No. 13-2, PageID 218-256).

For example, on December 10, 2021, Fieger's office sent a lengthy FOIA request to the Oakland County Prosecutor's Office requesting the following information:

- Full and complete file on [E.C.];
- Full and complete file on Jennifer Crumbley;
- Full and complete file on James Crumbley;
- Any and all charge paperwork and supporting documents;

---

[2] This information is expressly exempt from disclosure under FOIA. *See* MCL 15.243(1)(b)(i) and (ii). As such, the FOIA requests to law enforcement agencies were properly denied. (*See e.g.*, No. 26-2, PageID 362).

7

- Any video and audio recordings of the incident and/or the incident scene following the incident;
- Any and all video footage maintained and/or obtained by you from Oxford School regarding the incident on November 30, 2021;
- Any and all video footage maintained and/pr obtained by you regarding the incident on November 30, 2021, from:
- Meijer located at 900 N. Lapeer Rd., Oxford, MI 48371;
- Abbey Ridge Apartment Homes located at 211 Market Street, Oxford, MI 48371; and
- Tim Horton's located at 590 N. Lapeer Rd., Oxford, MI 48371;
- Any and all video footage maintained and/or obtained by you from any local business and/or residential property showing the vicinity of Oxford High School and/or the students at Oxford High School and/or EMS or Police arriving to Oxford High School on November 30, 2021, relating to the incident on November 30, 2021;
- Any and all video footage maintained and/or obtained by you from the students/or staff of Oxford High School;
- Any and all video footage maintained and/or obtained by you from any social media platform, including but not limited to: Tik Tok, Facebook, Instagram, WhatsApp, Viber, Zoom, YouTube, Apple and/or Android video streaming applications;
- Any and all video footage including, but not limited to, body cam and dash cam footage maintained and/or obtained by you from any law enforcement agency relating to the incident occurring on November 30, 2021;
- Any and all video obtained from your recording/surveillance equipment;
- Any and all photographs of the subject scene, [E.C.], and/or the students affected by the Oxford School Shooting occurring on November 30, 2021, which were taken at any time on the date of the subject incident and/or at any time after the subject incident;
- Any and all correspondence, including but not limited to, letters, emails, and social media direct messages, regarding possible and/or potential threats reported by students, parents, and/or community members regarding potential threats of violence against Oxford

8

High School for one (1) year preceding the Oxford High School shooting occurring on November 30, 2021;
- Any and all correspondence including but not limited to, letters, emails, and social media direct messages, relating to any school official response to potential reports of threatened violence at Oxford High School for one (1) year preceding the Oxford High School shooting occurring on November 30, 2021;
- Any and all social media posts maintained and/or obtained by you regarding reports of threatened violence at the Oxford High School for one (1) year preceding the Oxford School Shooting occurring on November 30, 2021;
- Any and all correspondence including, but not limited to, letters, emails, and social media direct messages, relating to any school official response to potential reports of threatened violence [E.C.] for one (1) year preceding the Oxford High School shooting occurring on November 30, 2021;
- Any and all social media posts maintained and/or obtained by you regarding reports of threatened violence a [E.C.] or one (1) year preceding the Oxford School Shooting occurring on November 30, 2021;
- Any and all social media posts maintained and/or obtained by you regarding the subject incident which occurred on November 30, 2021;
- Any and all files, file folders, memorandum, investigation record(s), investigation reports, complaints, witness statements, notes, photographs, drawings, diagrams and/or incident reports generated by you and/or obtained by you and/pr any of your agents or employees and/or anyone working on your behalf regarding threats of violence at the Oxford High School for one (1) year preceding incident which occurred on November 30, 2021;
- Any and all files, file folders, memorandum, investigation record(s), investigation reports generated by you and/or obtained by you and/or any of your agents or employees and/or anyone working on your behalf regarding the incident which occurred on November 30, 2021;

9

- Any and all employment records of agents and/or employees at Oxford High School;
- Any and all student files and records of students registered at Oxford High School on November 30, 2021;
- Any and all student counseling and/or social work and/or therapy records of students registered at Oxford High School on November 30, 2021;
- Any and all recorded statements by you and/or any agent and/or employee working on your behalf regarding threats of violence at the Oxford High School for one (1) year preceding the incident which occurred on November 30, 2021;
- Any and all recorded statements obtained by you and/or any agent and/or employee working on your behalf regarding the incident which occurred on November 30, 2021;
- Any and all tangible things believed to be in any way, shape or form directly or indirectly related to the Oxford School Shooting and/or threats of violence at the Oxford High School for one (1) year preceding the incident which occurred on November 30, 2021;
- The subject firearm that was discharged by E.C.;
- Any and all magazines, and/or bullets collected from the subject firearm that was discharged by E.C.;
- If the subject firearm used in the Oxford High School shooting is no longer in your possession and/or accessible, please preserve any and all documentation, receipts, files, memoranda, and records in your possession demonstrating transfer of ownership and/or destruction of the same;
- Any and all metadata and electronically stored information maintained and/or obtained by you posted on social media platforms, including, but not limited to Facebook, Instagram, Twitter, YouTube, Tik Tok, and Snap Chat;
- Any and all documents, photos, videos, and evidence produced to and/or submitted to the Oakland County Sheriff's Department, and/or any local/state/federal investigative agency charged with investigating the incident which occurred on November 30, 2021;

10

- Any and all photographs of the subject incident, involved witnesses to the subject incident which were taken at the time on the date of the subject incident and/or at any time after the subject incident;
- Any and all audio recordings (including but not limited to audio recordings of all phone calls to and from the police station and shift commander phones) which you and/or your agents or employees have obtained relative to the subject occurrence;
- Any and all 911 recordings pertaining to the subject incident which you and/or any of your agents or employees have obtained relative to the subject occurrence;
- Any and all files, file folders, memorandum, investigation record(s), investigation reports, complaints, witness statements, notes, photographs, drawings, diagrams and/or incident reports generated and/or obtained by you and/or any of your agents or employees and/or anyone working on your behalf;
- Any and all tangible evidence related to or relevant to the subject evidence;
- Any and all recorded statements obtained by you and/or any agent and/or employee working on your behalf;
- Any and all CAD or run sheets generated relative to the subject incident;
- Any and all CAD or run sheets generated relative to [E.C.];
- Any and all CAD or run sheets generated relative to Oxford High School;
- Any and all calls, text messages, or communications to dispatch relating to the subject incident which occurred on November 30, 2021;
- Any and all calls, text messages, or communications to dispatch relating to [E.C.] in 2021;
- Any cell phone download or data obtained from the cell phone of [E.C.];
- Any cell phone download or data obtained from the cell phone of Jennifer Crumbley;
- Any cell phone download or data obtained from the cell phone of James Crumbley;

11

- Any Social Media download or data obtained from the cell phone of [E.C.];
- Any Social Media download or data obtained from the cell phone of Jennifer Crumbley;
- Any Social Media download or data obtained from the cell phone of James Crumbley;
- Any and all drawings, texts, letters, or correspondence created by [E.C.];
- Any and all footage, records, photographs, or reports obtained from any news agency or source;
- Any and all evidence believed to be in any way, shape or form directly or indirectly related to the subject incident.

(ECF NO. 13-2, PageID 245-250). Plaintiffs are attempting to seek through civil discovery that which the Prosecutor has already indicated it will not produce. (See ECF No. 13).

**4.    Plaintiffs' Ability to Obtain the Desired Evidence from Law Enforcement After the Conclusion of the Criminal Cases**

Under FOIA, Plaintiffs can seek the previously requested public records from law enforcement agencies after the conclusion of the criminal cases. In fact, both the Oakland County Prosecutor's Office and the Oakland Sheriff's Office expressly informed Fieger's office of this in their responses to their FOIA requests. (See ECF No. 26-2, PageID 362; see ECF No. 23-3, PageID 366)(stating that **"You may resubmit your request at a later date (e.g., when the case concludes)"**)(emphasis added).

The Oakland County Sheriff's Department and the Oakland County Prosecutor have conducted an extensive investigation into this matter. This includes interviewing a number of witnesses from Oxford. The school and its employees have cooperated in all respects with the State's criminal investigation into this matter. There is no threat of spoliation of evidence as law enforcement agencies are required to preserve evidence relating to their criminal investigations and prosecutions. Fieger's office was expressly informed of this obligation in response to their FOIA requests. (See e.g., ECF No. 26-2, PageID 362)("**The Oakland County Prosecutor's Office will continue to preserve all records in accordance with applicable laws**")(emphasis added).

**5. The High Likelihood that there will be Companion Civil Cases Following the Conclusion of the Parallel Criminal Cases**

Since the filing of this lawsuit, Defense Counsel has received notice from numerous plaintiff attorneys indicating that they will pursue claims on behalf of their clients. There will be numerous claims pursued in both state and federal court. This raises the likelihood of conflicting rulings in differing courts and differing jurisdictions. There is no doubt that this will complicate the instant litigation. This raises questions of judicial economy, consolidation, and jurisdiction that will require the coordination of proceedings by the various courts before whom these numerous claims will be pursued.

## LAW AND ARGUMENT

I. **This Court Should Use Its Inherent Power to Stay this Case Pending the Outcome of the Parallel Criminal Cases Given that a Stay is in the Best Interest of the Parties to this Case, the Parties the Criminal Cases, and the Judiciary.**

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Similarly, district courts have "broad discretion in determining whether to stay a civil action while a criminal action is pending or impending." *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007).

"[T]he power to stay proceedings is identical to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)(citations omitted); *see Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio*, E. Div., 565 F.2d 393, 396 (6th Cir. 1977); *see Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010). There is no general rule for when a civil case will, *ipso facto*, impermissibly interfere with an ongoing criminal proceeding. *See St. Paul Fire and Marine, Ins., Co. v. U.S.*,

24 Cl. Ct. 513, 514 (1991). As such, a court should determine the propriety of a stay on a case by case basis after considering the following factors: (1) the potential prejudice to the plaintiffs; (2) the hardship or inequity imposed onto the defendants if the case was required go forward; (3) whether the stay promotes judicial economy by simplifying issues, proof, and questions of law which could be expected to result from a stay; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995); *see CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)(citing *Landis*, 299 U.S. at 254-255)); *see C3, Inc. v. United States*, 4 Cl. Ct. 790, 791 (1984).

As to the first factor, any delay caused by a stay would not prejudice Plaintiffs. In contrast, a stay would provide Plaintiffs with an enormous benefit. Based on Plaintiffs' Motion for Leave to Issue Rule 45 Subpoenas, Plaintiffs seek the investigative files from law enforcement agencies, as well as the evidence supporting the prosecutions of E.C., Jennifer Crumbley, and James Crumbley. (ECF 13; ECF 26). Once the prosecutions are complete, Plaintiffs can submit new FOIA requests. (See e.g., ECF NO. 26-2, PageID 362; see ECF NO. 23-3, PageID 366). Obtaining the investigative files through FOIA provides Plaintiffs with an economical benefit as it is far more cost effective than civil discovery.

Moreover, there is no threat of spoliation of evidence as Plaintiffs suggest. Defendants herein will scrupulously abide by this Court's order to preserve evidence. The criminal cases ensure that the evidence at issue will be preserved. In addition to Oxford Schools' compliance with this Court's order, both the Oakland County Prosecutor's Office and the Oakland County Sheriff's Office expressly informed Plaintiffs' counsel that they "will continue to preserve all records in accordance with applicable laws." (ECF No. 26-2, PageID 362; ECF NO. 26-3, PageID 366). Similarly, Plaintiffs' ability to obtain evidence and testimony from the criminal cases should alleviate any concerns of "fading memories." Law enforcement interviewed many witnesses the same day as the incident. The most relevant witnesses will likely testify in James and Jennifer Crumbley's preliminary examination scheduled for February 8, 2022. This will allow Plaintiffs to obtain sworn testimony of the relevant witnesses far before any depositions could occur in this case. Furthermore, the information that Plaintiffs are able to obtain from the criminal cases may resolve issues and make the litigation of Plaintiffs' claims in this case more efficient. Accordingly, this factor weighs in favor of granting a stay.

As to the second factor, Defendants would suffer hardship if this case was permitted to go forward. Defendants want justice for the victims and for the Oxford Community. Because of this, Defendants are currently cooperating with the Oakland County Prosecutor's criminal investigations. Given the broad reach of civil

discovery, permitting this case to go forward would force Defendants to disclose sensitive information that is crucial to the criminal investigations and the resulting criminal proceedings. Numerous companion civil cases will be filed following the conclusion of the criminal cases. Requiring this case to move forward prior to those filings will result in duplicative proceedings, unnecessary expense, and conflicting results. These factors weigh in favor of a stay.

As to the third factor, there is no question that a stay favors judicial economy as it will likely narrow the issues and streamline the discovery process in this case. *See Maloney v. Gordon*, 328 F. Supp. 2d 508, 513 (D. Del. 2004)("If the civil action is stayed until the conclusion of the criminal proceedings, then it obviates the need to make rulings regarding potential discovery disputes involving issues that may affect the criminal case … furthermore, the outcome of the criminal proceedings may guide the parties in settlement discussions and potentially eliminate the need to litigate some or all of the issues in the case."); *see also Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 58 (D.C. 1980)(holding that the termination of a parallel criminal case can be expected to remove the predicate for the assertion of the Fifth Amendment right against incrimination by potential deponents in the civil case, which would allow discovery to proceed more smoothly than it would before the completion of the parallel criminal cases), a consideration which is particularly pertinent in this matter.

Furthermore, given the high likelihood that multiple companion civil cases will be filed after the conclusion of the criminal cases, a stay would allow this Court to make an informed decision regarding how to best conserve judicial resources. Litigating multiple cases with the similar questions of law and fact will place a burden on the judiciary because of the overlap in discovery and scheduling. Separate litigation of numerous civil cases before multiple judges in both state and federal court could also pose a risk of inconsistent adjudication of common factual and legal issues. Thus, this factor weighs in favor of granting a stay.

As to the fourth factor, the criminal defendants have an interest in having a fair trial. Based on Fieger's conduct thus far, he will continue to litigate this case in the media and will likely release sensitive information obtained in civil discovery to the press. As expressed by the Oakland County Prosecutor, this could "interfere with [the criminal] proceedings and jeopardize the defendants' right to a fair trial." (ECF No. 26-2, PageID 363). These additional factors weigh in favor of a stay.

As to the fifth factor, the stay would best serve the public interest in justice by preventing the civil action from interfering with the ongoing criminal proceedings, which should be given priority at this time. *See Paul Fire and Marine Ins.*, 241 Cl. Ct. at 517(holding that the interest of justice requires freezing civil proceedings when a criminal prosecution involving the same facts is warming up or underway as to obviate improper interference with ongoing criminal proceedings); *see U.S. v Any*

18

*and All Assets of that Certain Business Known as Shane Co.*, 147 F.R.D. 99, 101 (M.D.N.C. 1992)("The public has an interest in law enforcement which may, under proper circumstances, be given priority over concurrent civil proceedings.")); *see Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)(holding that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.")). Because the broader rules of civil discovery could compromise the ongoing parallel criminal cases, this factor weights in favor of a stay.

In sum, all competing interests weigh heavily in favor of staying this case. Therefore, this Court should use its inherent authority and stay this case pending the conclusion of the parallel criminal cases.

## CONCLUSION

Defendants request that this Court stay this case as would comport with this Court's discretion. Defendants would suggest that this stay remain in place until the aforementioned criminal trials are completed.

                                              /s/TIMOTHY J. MULLINS
                                              GIARMARCO, MULLINS & HORTON, PC
                                              Attorney for Defendants, Oxford Community
                                                Schools, Timothy Throne, Steven Wolf and
                                                Ryan Moore

LOCAL RULE CERTIFICATION: I, Timothy J. Mullins, certify that this document complies with Local Rule 5.1(a), including: double-spaced (exception for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants, Oxford Community Schools, Timothy Throne, Steven Wolf and Ryan Moore

DATED: January 24, 2022

## CERTIFICATE OF ELECTRONIC SERVICE

TIMOTHY J. MULLINS states that on January 24, 2022, he did serve a copy of **DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING THE CONCLUSION OF THE PARALLEL CRIMINAL CASES, CASE NOS. 21-006611-FY, 21-006652-FY, AND 21-006651-FY** via the United States District Court electronic transmission.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants, Oxford Community Schools, Timothy Throne, Steven Wolf and Ryan Moore
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
P28021