UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY FRANZ, et al.,

        Plaintiffs,

vs.

OXFORD COMMUNITY SCHOOL
DISTRICT, et al.,

        Defendants.
_____/

Case No. 21-cv-12871

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) DENYING PLAINTIFFS' EX PARTE EMERGENCY MOTION TO ISSUE
SUBPOENAS UNDER FED. R. CIV. P. 45 (Dkt. 13); (2) DENYING DEFENDANT
MOORE'S MOTION TO DISMISS, TO GRANT SUMMARY JUDGMENT, AND TO
AWARD SANCTIONS (Dkt. 14); AND (3) DENYING DEFENDANTS' MOTION TO
STAY THE CASE (Dkt. 33)**

Three motions are before the Court: (i) Plaintiffs' ex parte emergency motion to issue subpoenas under Federal Rule of Civil Procedure 45 (Dkt. 13); Defendant Ryan Moore's motion to dismiss, to grant summary judgment, and to award sanctions against counsel for Plaintiffs (Dkt. 14); and Defendants' motion to stay the case (Dkt. 33). For the reasons that follow, the Court denies all three motions.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motions identified, the briefing includes Defendant Oxford Community School District's response to Plaintiffs' motion for subpoenas (Dkt. 16); Plaintiffs' reply (Dkt. 26); Plaintiffs' response to Moore's motion to dismiss, to grant summary judgment, and to award sanctions (Dkt 17); Moore's reply (Dkt. 18); Plaintiffs' response to Defendants' motion to stay (Dkt. 35); and Defendants' reply (Dkt. 37). Where the parties' filings include briefs that are paginated separately from the filings, the Court cites separately to the filings and to the briefs in support of those filings.

1

# I. BACKGROUND

This case derives from a tragic incident that occurred at Oxford High School in Oxford, Michigan on November 30, 2021, when student Ethan Crumbley allegedly brought a firearm into the high school and shot multiple fellow students.

Plaintiffs—minor students RF and BF, who were present during the incident, and their parents Jeffrey and Frandi Franz, who sue individually and as Next Friends for RF and BF—bring suit against Oxford Community School District and eight of its employees. Plaintiffs allege that Defendants' actions and non-actions in advance of the November 30 incident provide a basis for the following claims: (i) a Fourteenth Amendment violation cognizable under 42 U.S.C. §§ 1983 and 1988, based on Defendants' alleged creation of a danger and increase of Plaintiffs' risk of harm, Am. Compl. ¶¶ 152–162 (Dkt. 29); (ii) Defendant Superintendent Timothy Throne and Defendant Principal Steven Wolf's supervisory liability for the same, id. ¶¶ 163–175; (iii) Oxford Community School District's liability for the same under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), id. ¶¶ 176–189; (iv) multiple counts for gross negligence, id. ¶¶ 190–374; (v) multiple counts for intentional and/or negligent infliction of emotional distress, ¶¶ 375–388; and (vi) a violation of Michigan's Child Protection Law, Mich. Comp. L. § 722.621, et seq, id. ¶¶ 389–410.

Parallel to this civil case, the Oakland County Prosecutor's Office has brought criminal charges against Ethan Crumbley and his parents, James and Jennifer Crumbley.[2] Ethan is charged with carrying a concealed firearm under Mich. Comp. L. § 750.227, assault with intent to murder under Mich. Comp. L. § 750.83, first-degree murder under Mich. Comp. L. § 750.316, and

---

[2] The Court refers to James, Jennifer, and Ethan Crumbley by their first names.

terrorism causing death under Mich. Comp. L. § 750.543f. James and Jennifer are charged with involuntary manslaughter under Mich. Comp. L. § 750.321.

## II. ANALYSIS

Plaintiffs filed an ex parte emergency motion for subpoenas under Rule 45, and Moore filed a motion requesting that he be dismissed from this case. On January 20, 2022, the Court held a hearing on these motions, during which counsel for Defendants argued that the Court should consider staying this case pending resolution of the parallel criminal proceedings. After the Court ordered briefing on this issue (Dkt. 30), Defendants filed a motion to stay this case.

The Court addresses each motion, beginning with the threshold question of whether it is appropriate to stay the current action.

### A. Defendants' Motion to Stay Case

"[D]istrict courts have 'broad discretion in determining whether to stay a civil action while a criminal action is pending or impending.'" F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 627 (6th Cir. 2014) (quoting Chao v. Fleming, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)). District courts "consider and balance" the following factors when determining whether to stay civil proceedings:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Id. "[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." Id. at 627–628 (punctuation modified).

3

The Court considers each factor in turn and determines that the factors collectively weigh against a grant of a stay at this time.

**1) Overlap of Issues in Civil Case and Criminal Cases**

The extent to which the issues in a criminal case overlap with those presented in a civil case is generally considered the "'most important factor'" for determining whether or not to grant a stay. Chao, 498 F. Supp. 2d at 1039 (quoting Metzler v. Bennett, No. 97-CV-148 (RSP/GJD), 1998 WL 187454, at *6 (N.D.N.Y. Apr. 15, 1998)).[3] Under this factor, a stay is appropriate where "the substantive factual and legal issues would be almost identical," id., or where there is "a substantial, if not a total, overlap of witnesses and documentary evidence," St. Paul Fire & Marine Ins. Co. v. United States, 24 Cl. Ct. 513, 516 (1991).

A generally cited rationale for granting a stay in the event of overlapping issues is the "danger of potential self-incrimination issues," as a party who testifies in a civil case risks the use of that testimony against him or her in the criminal proceeding. Sikon et al. v. Carroll Cnty., Ohio, et al., No. 5:20-CV-0674, 2020 WL 8838043, at *2 (N.D. Ohio June 12, 2020); see also Chao, 498 F. Supp. 2d at 1039 ("[I]f there is no overlap, then there would be no danger of self-incrimination and no need for a stay.") (punctuation modified); F.T.C., 767 F.3d at 627 ("[D]istrict courts should consider the extent to which the defendant's fifth amendment rights are implicated.") (punctuation modified). This consideration clearly contemplates that at least one party to the civil case will be a defendant in a criminal case, or at least subject to a criminal investigation. See, e.g., Shirsat v. Mut. Pharm. Co., No. CIV.A 93-3202, 1995 WL 695109, at *3 (E.D. Pa. Nov. 21, 1995) (denying

---

[3] See also Rimmel v. Burke, No. 119CV00223JRGSKL, 2020 WL 12863520, at *2 (E.D. Tenn. July 24, 2020); McGee v. Madison Cnty., Tenn., No. 1:15-CV-01069, 2015 WL 3648986, at *3 (W.D. Tenn. June 10, 2015); Kanaan v. Falsetti, No. 12-11680, 2012 WL 2829951, at *2 (E.D. Mich. July 10, 2012); Maloney v. Gordon, 328 F. Supp. 2d 508, 511 (D. Del. 2004); In re Adelphia Commc'ns Sec. Litig., No. 02-1781, 2003 WL 22358819, at * 3 (E.D. Pa. May 13, 2003).

4

motion to stay where the only civil defendant originally party to the criminal proceedings "signed a non-appealable plea agreement" and so was "no longer involved in that case"). Indeed, Defendants—and the Court—are unable to identify a single case finding an overlap of issues that was sufficient to grant a stay where no party to the civil suit was a defendant to a criminal case or subject to a criminal investigation.[4]

Here, there is no overlap between the parties in the civil case and the parties in the criminal cases. The parties in this case are (i) minor students who were present for the events on November 30 and their parents, and (ii) the Oxford Community School District and certain of its employees. The parties in the criminal case are (i) the State of Michigan, and (ii) criminal defendants James, Jennifer, and Ethan. Because no civil party is subject to a criminal investigation or prosecution, there is "no danger of self-incrimination"—the most important factor weighing in favor of a stay. Chao, 498 F. Supp. 2d at 1039 (punctuation modified).

Defendants suggest a different standard, arguing that "the issues sufficiently overlap when the event giving rise to the civil action is the central event to any criminal charges," and here, "there is substantial overlap between this case and the parallel criminal cases given that they both arise from the November 30, 2021, incident." Reply in Supp. Mot. to Stay at 1–2. Defendants

---

[4] In the cases that Defendants cite to argue that the overlap of issues in the present action supports a stay—like the cases that Defendants cite throughout their briefing—the parties to the civil suits were also defendants in criminal prosecutions or subject to criminal investigations. See Reply in Supp. Mot. to Stay at 1 (citing McGee, 2015 WL 3648986, at *3 (granting a stay where the Department of Justice opened an investigation in which the civil defendant was expected to be a primary suspect, noting that the parallel proceedings "create[] a danger of self-incrimination on the part of" the civil defendant); Sikon, 2020 WL 8838043, at *2 (granting a stay where the state criminal investigation into a shooting involved the shooter who was also the defendant in a civil case, noting the substantial overlap between both matters and the danger of potential self-incrimination); Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523, 527 (D.N.J. 1998) (granting a stay where the civil plaintiff challenged allegedly fraudulent transactions and the United States Attorney's Office opened an investigation into the same transactions)).

also argue that there is "substantial overlap in the relevant evidence for the criminal and civil cases," noting that Plaintiffs in this civil case have sent requests under the Freedom of Information Act to obtain extensive evidence relating to the criminal cases from the Oakland County Prosecutor's Office. Mot. for Stay at 7–12.

A stay is not justified just because the criminal and civil cases arise from the same incident or feature similar evidence. See, e.g., Vision Real Est. Inv. Corp. v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:18-CV-00014, 2019 WL 7461198, at *2 (M.D. Tenn. Dec. 16, 2019) (finding that the overlap-of-issues factor weighed against a stay where there was "only some overlap" between a civil suit challenging termination of a contract and a criminal case against the civil plaintiff for theft relating to operation of that contract); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 157 (E.D.N.Y. 2005) (overruling objection to magistrate judge's recommendation to deny a stay where civil defendant health care providers were accused by insurer of fraudulently proscribing medically unnecessary tests and were also indicted in a criminal insurance fraud case, in part because defendants "failed to demonstrate that the issues in the instant civil action sufficiently overlap with those in the pending criminal matter") (punctuation modified).

Although there is undoubtedly some overlap between the evidence in the civil and criminal cases, there is also a notable divergence in the issues likely relevant to (i) Plaintiffs' claims that the school district and its employees increased Plaintiffs' risk of harm and were grossly negligent, see Am. Compl. ¶¶ 152–411, and (ii) the criminal prosecution's charges that James and Jennifer committed involuntary homicide and that Ethan illegally carried a concealed firearm, committed assault with intent to murder, committed first-degree murder, and engaged in terrorism causing death. This factor weighs against Plaintiffs' argument for a stay.

**2) Status of the Criminal Cases**

The second factor pulls in the same direction for similar reasons. The United States Court of Appeals for the Sixth Circuit has explained that "[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct . . . ." F.T.C., 767 F.3d at 628 (punctuation modified). The primary rationale for granting a stay when a civil defendant has been indicted in a criminal case is—again—that "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued." Id.; see also Sec. & Exch. Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1375–1376 (D.C. Cir. 1980) ("[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination . . . ."). Because "the case for a stay is strongest where the defendant has already been indicted," requests for stays made when no civil defendants have been indicted "are usually denied." Chao, 498 F. Supp. 2d at 1037.[5]

No parties in this civil suit have been indicted in the criminal cases. This factor weighs against a grant of a stay.[6]

---

[5] A circumstance where a civil party is criminally indicted presents the "strongest case" for a stay, Maloney v. Gordon, 328 F. Supp. 2d 508, 511 (D. Del. 2004) (punctuation modified), and courts "generally do not stay proceedings" without an indictment of a civil party, F.T.C., 767 F.3d at 628. However, as discussed, even where courts have granted stays without indictments of civil parties, those civil parties were the subject of criminal investigations. See, e.g., Sikon, 2020 WL 8838043, at *2. Defendants here do not claim to be the subject of any criminal investigation.

[6] Given the primacy of the interests of criminal defendants in determining whether or not to grant a stay, the Court also takes into consideration the representations of counsel for James and Jennifer that they do not support Defendants' present motion. See 1/27/22 Smith Lehman, PC Letter (Dkt. 35-4) ("[W]e do not support the request for a stay in the civil matter, nor do we join the civil defendants in their request for a stay. We do not believe that the civil matters proceeding forward interferes with our clients' rights to a fair trial in any way.") (emphasis in original).

### 3) Interests of and Prejudice to Plaintiffs

Plaintiffs assert that they need to pursue their case and gather relevant information now, while evidence is available and has not yet spoliated. See Resp. to Mot. to Stay at 13; see also Mot. for Subpoenas. They also contend that staying this civil case until the conclusion of the criminal cases would likely require that they wait for years before they can pursue the current action. Mot. to Stay at 13.

Spoliation does not appear to be a major risk, given that this Court has already entered an order requiring that Defendants preserve all electronically stored evidence that relates to this matter. See 12/10/21 Order (Dkt. 12). Defendants also note that the evidence gathered by the Oakland County Sheriff's Department and the Oakland County Prosecutor will be preserved and made available to Plaintiffs following the conclusion of the criminal cases. See Resp. to Mot. to Stay at 12–13, 15–16.

On the other hand, the risk of memories fading or witnesses becoming unavailable is a greater threat, in light of the Defendants' request that a stay remain in place until conclusion of the criminal cases. Possible trials and appeals in those matters could, potentially, keep this case frozen for years. This could impair the truth-seeking function of the court and trigger additional anguish for Plaintiffs, who would be blockaded from pursuing their claims. See Sikon, 2020 WL 8838043, at *3 ("There is no doubt that plaintiffs—and indeed all civil-action plaintiffs—have an interest in pursuing their claims expeditiously.").

On balance, this factor favors denying a stay.

### 4) Private Interests of and Burden on Defendants

Defendants submit that they will suffer hardship if this civil case proceeds because civil discovery would compromise the criminal investigations by "forc[ing]" Defendants to disclose

8

sensitive information "crucial" to those proceedings. Mot. to Stay at 16–17. This basis for granting a stay is conclusory, as Defendants fail to specify any type of information that would hinder the criminal proceedings if it came to light in the civil action. The evidence relevant to this suit—relating to the allegedly grossly negligent actions of a school district and its employees that increased or created the risk of harm resulting from a school shooting—will likely diverge from the evidence relevant to murder, negligent homicide, and related charges against the shooter himself and the parental unit responsible for him. Thus, this case is distinguishable from cases where the civil and criminal actions "churn[ed] over the same evidentiary material" and civil discovery thereby risked "compromis[ing] parallel criminal proceedings." St. Paul Fire, 24 Cl. Ct. at 516 (punctuation modified). If such a risk of obstruction arises, the Court has tools to prevent developments in the civil matter from impacting the criminal cases, including by limiting discovery of certain matters.

Defendants also predict that, once the criminal cases conclude, numerous new civil cases will be filed, and they argue that allowing this civil case to move forward will result in "duplicative proceedings, unnecessary expense, and conflicting results." Mot. to Stay at 17. However, the Court has procedures to address duplicative proceedings by consolidating companion cases before the same judge, which alleviates the risk of conflicting results. See E.D. Mich. LR 83.11.[7]

---

[7] Defendants do not argue that they will be burdened by issues such as the threat of self-incrimination or the exploitation of civil discovery by criminal defendants—factors that have counseled in favor of granting stays in other civil cases. See, e.g., Chao, 498 F. Supp. 2d at 1039 ("[R]equiring Defendants to choose between asserting their Fifth Amendment rights (thereby subjecting themselves to the very real possibility of adverse inferences) and defending themselves in this action imposes a substantial burden upon Defendants . . . ."); Maloney, 328 F. Supp. 2d at 512 ("[B]ecause the civil and criminal issues are so closely intertwined, the Defendants may be put to the choice of invoking their Fifth Amendment rights sooner than they ought, if discovery in the civil case is allowed to proceed in any capacity . . . .") (citations omitted); Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal

On the whole, this factor does not support a stay.

### 5) Interests of the Court

Where resolution of a criminal case will limit the issues before the court on the civil matter, then the court's interests may favor a stay. See, e.g., Chao, 498 F. Supp. 2d at 1040 ("[S]carce judicial resources in this district at this time would be best used by staying this case in favor of the criminal case, which may ultimately reduce or eliminate the need for discovery or result in a settlement of this case if Defendants are convicted."); Maloney, 328 F. Supp. 2d at 513 ("Staying this case is better for judicial efficiency . . . the outcome of the criminal proceedings may guide the parties in settlement discussions and potentially eliminate the need to litigate some or all of the issues in this case.").

Here, the resolution of the criminal cases—featuring different parties facing distinct charges—is not likely to significantly "narrow any issues in this civil action," Shirsat, WL 695109, at *3, or "eliminate the need to litigate some or all of the issues in this case," Maloney, 328 F. Supp. 2d at 513. This factor does not add weight in either direction.

### 6) Public Interest

A stay may be in the public interest where the criminal case advances the same interests as the civil case or where it makes sense to prioritize the interests of the criminal case. See, e.g., Chao, 498 F. Supp. 2d at 1040 (finding that stay was not against public interest in civil enforcement of ERISA because "[t]o a large extent . . . the criminal case will serve to protect and advance those same interests . . . while important interests are asserted in the civil action, those interests will be

---

discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit . . ."); Walsh Sec., 7 F. Supp. 2d at 527 (finding a stay of discovery was appropriate where the "Government [] expressed concern that interrogatory and deposition discovery in this matter could harm its investigation by disclosing testimony of potential government witnesses in the criminal action").

represented in the criminal case"); Walsh Sec., 7 F. Supp. 2d at 529 ("[A] stay in this case would benefit the public by allowing the Government to conduct a complete, unimpeded investigation into potential criminal activity.").

Where these considerations are not present, however, the public interest favors a timely proceeding of civil litigation. See F.T.C., 767 F.3d at 628–629 (finding that this factor weighed against granting a stay where "the FTC pursued claims on behalf of consumers whose interactions with Defendants caused them to suffer great financial hardship . . . these individuals are desperate to recover their lost funds as quickly as possible . . . . The public interest is furthered where individuals' injuries are remedied in a timely manner.").

The civil suit against the school district and its employees advances different ends than the criminal case against an alleged individual shooter and his parents. The Court is not aware of any risk that proceeding with the civil case will interfere with the criminal cases, and if such risks arise, then the Court can address those concerns through targeted means—for example, by limiting certain aspects of discovery. Additionally, it is in the public interest for Plaintiffs' alleged injuries to be "remedied in a timely manner" if Plaintiffs can make out their case. Id. This factor weighs against a stay.

Having reviewed all of the relevant factors, the Court finds that they collectively weigh against granting a stay. Defendants' motion for a stay is denied.

## B. Moore's Motion to Dismiss

Plaintiffs allege, based on information and belief, that Moore was the Dean of Students for Oxford High School during the period leading up to the incident on November 30, 2021. Am. Compl. ¶ 16. They allege that Moore attended a meeting with James and Jennifer on the day of the incident, after Oxford High School staff found a violent note drawn by Ethan that contained

11

threats of bodily harm. Id. ¶¶ 98–100. These allegations are largely based on a written statement made by Throne on December 4, 2021: "On the morning of Nov. 30, a teacher observed concerning drawings and written statements that have been detailed in media reports, which the teacher reported to school counselors and the Dean of students." 12/4/21 Throne Statement (Dkt. 17-2) (emphasis added). Plaintiffs bring claims against Moore for (i) creation of a danger and increase of risk of harm as a state actor in violation of the Fourteenth Amendment, Am. Compl. ¶¶ 152–162; (ii) gross negligence, id. ¶¶ 244–268; (iii) intentional and/or negligent infliction of emotional distress, id. ¶¶ 375–388; and violation of Michigan's Child Protection Law, Mich. Comp. L. § 722.621, et seq, id. ¶¶ 389–410.

Moore filed a combined "Motion to Dismiss/Summary Judgment" requesting that the Court dismiss him from this lawsuit. Mot. to Dismiss and for Summ. J. at 1, 8. He also asks that the Court award sanctions against counsel for Plaintiffs for "su[ing] someone entirely unconnected to this event." Id. at 7. Moore alleges that he was not the High School Dean of Students and that he works in a separate building. Id. at 2. He submitted a sworn declaration averring: "I was not the Dean of Students at Oxford High School on November 30, 2021." Moore Aff. ¶ 1 (Dkt. 14-1). Moore asserts that, as a result of his being improperly named as a defendant in this action, he has suffered reputational damage and is concerned for the safety of his family. Id. ¶¶ 4–10.

Plaintiffs maintain that they have reason to believe that Moore was the acting Dean of Students at the time of the incident. Resp. to Mot. to Dismiss at 2. They submit two screenshots—allegedly taken from the Oxford High School website on November 18 and December 1, 2021—in which the "Administration" page identifies Moore as "Dean of Students" (Dkts. 17-4, 17-5). They also submit a screenshot of Moore's LinkedIn page which identifies him as the "Dean of Students" for "Oxford community schools" (Dkt. 17-6). Plaintiffs represent that they are prepared

to dismiss Moore and add the correct Oxford High School Dean of Students if Defendants identify that individual. Br. in Supp. Resp. to Mot. to Dismiss at 4. Based on current information, however, Plaintiffs state that "[t]here exists [a] genuine dispute of material fact that Defendant Moore was the Dean of Students at Oxford High School," and "[d]ismissal without verification and discovery would prejudice Plaintiffs in the prosecution of their claims." Id. at 7.

Essentially, Plaintiffs allege that a certain individual engaged in actions that give rise to legal claims, and that they believe Moore is that individual. Defendants, relying on Moore's assertions, represent that Plaintiffs have named the wrong person. At the threshold of this case, the Court cannot decide this issue. If Moore's motion is viewed as a motion to dismiss, Plaintiffs' allegations against Moore are sufficient to forestall dismissal, as Defendants have not challenged that the complaint "allege[s] facts, which if proved, would entitle the claimant to relief." Helfrich v. PNC Bank, Kentucky, Inc., 267 F.3d 477, 480 (6th Cir. 2001). Defendants' alternative request for summary judgment is premature, because Plaintiffs have not had an opportunity to conduct discovery and challenge the evidentiary sufficiency of Moore's declaration. See Perkins v. Rock-Tenn Servs., Inc., 700 F. App'x 452, 455 (6th Cir. 2017). Until the parties agree on Moore's role in this action or a summary judgment motion is filed after an opportunity for discovery, Moore must remain a party to this suit. Because the Court excludes materials outside the pleadings, as permitted under Federal Rule of Civil Procedure 56(d), Moore's motion is denied based solely on the allegations contained in the pleadings.

### C. Plaintiffs' Motion for Rule 45 Subpoenas

Plaintiffs request that, pursuant to Rule 45, they be permitted to issue—or that the Court itself issue—subpoenas to 20 entities. Mot. for Subpoenas at 11. These entities are certain social

media companies; telecommunications firms; and governmental entities such as the Oakland County Prosecutor, Oakland County Sheriff's Office, and Oxford Community School District. Id.

Plaintiffs submit that they will "endure a substantial harm without immediate authority for issuance of" the subpoenas "because without the ability to obtain the information, Plaintiffs cannot otherwise obtain evidence necessary for the prosecution of their case." Id. at 5. The irreparable harms Plaintiffs claim they will suffer if not granted immediate subpoena power include (i) "[t]he loss of contemporaneous review and evaluation of material evidence" as well as "additional material evidence which would be triggered by the present production of the existing evidence," (ii) "[t]he loss of and/or exacerbation of any chain of custody concerns regarding material evidence," and (iii) the risk that state courts will issue protective orders in the criminal cases "extending the duration of the purported confidentiality of material evidence." Id. at 6. Plaintiffs believe they will suffer prejudice if they "cannot obtain information to independently question witnesses that are known to the Defendants, while [Defendants] will have unfettered access to the information subject[] to this lawsuit," and they argue that "the delayed disclosure of this information, runs a substantial risk of spoliation of the same as witness memories fade, and data and information become obsolete." Id. at 6–7.

Plaintiffs rely in part on a stipulation and protective order entered into by Oakland County Prosecutor and Ethan in Ethan's criminal prosecution. See 12/10/21 Oakland County Order (Dkt. 13-3). Plaintiffs believe that this order "mandates a preclusion of disclosure of information and evidence to civil attorneys" and thus "precludes Plaintiffs from obtaining evidence necessary to prosecute their claims in this matter." Mot. for Subpoenas at 3–4. The order provides that counsel for Ethan may review certain evidence in the custody and control of the Oakland County Prosecutor, but it prohibits defense counsel from disclosing or providing these materials to anyone

14

not authorized under the order—including attorneys involved in civil litigation. 12/10/21 Oakland County Order at PageID.258–260.

Oxford Community School District responds that "the parties are not permitted to begin discovery at this juncture" because they have not yet conferred as required under Federal Rule of Civil Procedure 26(f). Resp. to Mot. for Subpoenas at 3. Rule 26(d)(1) states: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Plaintiffs, argues Oxford Community School District, have failed to establish good cause for abrogating the usual discovery rules, and Plaintiffs "cite no legal authority in support of their proposition that this Court should expedite discovery . . . ." Resp. to Mot. for Subpoenas at 3.[8]

The Court agrees with Oxford Community School District that it is proper for the parties to engage in the usual procedures for civil discovery and submit a Rule 26(f) report before determining whether to issue subpoenas. See Weaver v. R & L Carriers Inc., No. 3:12-CV-448, 2013 WL 595196, at *2 (E.D. Tenn. Feb. 15, 2013) (granting motions to quash "premature" Rule 45 subpoenas issued to non-parties prior to Rule 26(f) conference, explaining that the parties could address related issues "during their Rule 26(f) conference or conduct an additional conference to

---

[8] Oxford Community School District takes particular issue with Plaintiffs' attempt to issue a Rule 45 subpoena to it—a party to this action—as "'[d]iscovery from a party, as distinct from a nonparty, is governed by Rule 34, not Rule 45.'" Resp. to Mot. for Subpoenas at 6 (quoting Stokes v. Xerox Corp., No. 05-CV-71683-DT, 2006 WL 6686584, at *3 (E.D. Mich. Oct. 5, 2006) (punctuation modified) (granting motion to quash Rule 45 subpoena issued to party)). The Court agrees that Rule 34 is the appropriate vehicle to seek discovery from a party. See Flagg v. City of Detroit, No. 05-74253, 2008 WL 787039, at *5 (E.D. Mich. Mar. 20, 2008) (noting the cross-circuit "split of authority as to whether a Rule 45 subpoena is a proper device for obtaining documents from parties or their agents or representatives" and finding that "a Rule 34 document request, rather than a Rule 45 subpoena, is the preferred mechanism for seeking documents from parties or their agents").

specifically address the issue of non-party subpoenas"). Plaintiffs have made no showing that the unique circumstances of this case demand expedited requests for evidence from a broad range of entities, including entities engaged in the prosecution of parallel criminal cases. As noted, this Court has already entered an order requiring that Defendants preserve all electronically stored evidence that relates to this matter, alleviating some of Plaintiffs' concerns. See 12/10/21 Order. To the extent that Plaintiffs' apprehensions are based on the protective order entered in Ethan's criminal case, these concerns are now moot; by its own terms, that order is no longer in effect, as Ethan has now been bound over for trial, and so the issuing court has lost jurisdiction. See 12/10/21 Oakland County Order at PageID.258–260 ("The Court shall retain jurisdiction to enforce or modify its terms until such time as this District Court has lost jurisdiction."). The issuance of Rule 45 subpoenas is not appropriate at this stage. Plaintiffs' motion is denied.

### III. CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' ex parte emergency motion to issue subpoenas under Rule 45 (Dkt. 13); Defendant Ryan Moore's motion to dismiss, to grant summary judgment, and to award sanctions against counsel for Plaintiffs (Dkt. 14); and Defendants' motion to stay the case (Dkt. 33).

SO ORDERED.

Dated: March 24, 2022           s/Mark A. Goldsmith
    Detroit, Michigan        MARK A. GOLDSMITH
                               United States District Judge