# Exhibit 4

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

1/16/2024 5:37 PM   Oakland County Clerk   Received for Filing   FILED

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

OXFORD COMMUNITY SCHOOLS,

  Plaintiff,

v.

MASB-SEG PROPERTY/CASUALTY POOL, INC.,

  Defendant.

No. 24-_____-CK

2024-204988-CK

Hon. ___JUDGE JACOB J. CUNNINGHAM

| TAFT STETTINIUS & HOLLISTER LLP | PERKINS COIE LLP |
|---|---|
| David Z. Adler (P71227)<br>27777 Franklin Road, Suite 2500<br>Southfield, MI 48034<br>(248) 351-3000<br>dadler@taftlaw.com<br><br>*Attorneys for Plaintiff Oxford Community Schools* | James M. Davis (pro hac vice forthcoming)<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101-3099<br>Tel. (206) 359-8000<br>JamesDavis@perkinscoie.com<br><br>Bradley Dlatt (pro hac vice forthcoming)<br>110 North Wacker Drive, Suite 3400<br>Chicago, IL 60606-1511<br>Tel. (312) 324-8400<br>BDlatt@perkinscoie.com |

There are no other pending or resolved civil actions in this Court arising out of the same transaction or occurrence as alleged in this Complaint.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Oxford Community Schools ("Oxford" or the "District"), by and through its undersigned counsel, Taft Stettinius & Hollister LLP and Perkins Coie LLP, for its Complaint for declaratory judgment pursuant to MCR 2.605 against Defendant MASB-SEG Property/Casualty Pool, Inc. ("Insurer"), states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Oxford is a Michigan Public School District performing a governmental function in Oakland County, Michigan.

2. Insurer is a member-owned and operated, non-profit corporation incorporated in Michigan with its principal place of business in East Lansing, Michigan.

130639247v1

3. The Court has jurisdiction over this matter pursuant to MCL 600.601, MCL 600.605, and MCL 600.8315.

4. The amount in controversy exceeds $25,000, exclusive of interest, costs, and attorney fees, and Oxford seeks a declaratory judgment pursuant to MCR 2.605.

5. Venue is proper in this Court pursuant to MCL 600.1621(a) as Insurer conducts business in Oakland County, Michigan by issuing insurance policies, including the policy at issue in this action. Venue is alternatively proper pursuant to MCL 600.1621(b) as Plaintiff Oxford resides in Oakland County, Michigan.

## NATURE OF THE ACTION

6. This is a civil action wherein Oxford is seeking a declaration that its facially ambiguous insurance policy must be interpreted to provide full coverage and separate limits for numerous separate occurrences. Although Insurer agrees that Oxford's claims are covered under the Policy, Insurer refuses to construe the ambiguous policy language in favor of coverage as required by Michigan law. Courts in Michigan and elsewhere have declared the same or substantially similar language ambiguous under the same or similar circumstances and, thus, construed the language in favor of coverage.

7. Oxford has been named in multiple lawsuits in state and federal court seeking damages for Oxford's and its employees' alleged liability for a tragic November 30, 2021 shooting at Oxford High School, where four individuals were killed and seven others were injured (the "Underlying Suits").

8. Insurer issued a policy to Oxford providing, *inter alia*, $1 million per occurrence in Commercial General Liability and $4 million per occurrence in Excess Liability coverage with no aggregate limit and no deductible (the "Policy").

9. Insurer has defended and agreed to indemnify Oxford with respect to the Underlying Suits. Insurer, however, has taken the position that the Underlying Suits allege bodily injuries caused by only one "occurrence" in an effort to cap its total liability under the Policy at one set of limits in the total amount of $5 million.

10. Given the facially ambiguous language of the Policy, Oxford disagrees and reasonably interprets the Policy as applying to the Underlying Suits with separate "occurrences" either for (1) each individual who was injured, with each injury being caused by a separate, independent decision by the shooter to fire his weapon; or, alternatively (2) each alleged wrongful act or omission by Oxford or its employees (and/or each alleged Oxford policy or practice) that purportedly contributed to and/or failed to prevent the shooting. Accordingly, Oxford is not limited to $5 million in seeking to reasonably settle the Underlying Suits or in the event of an adverse trial judgment, and is, at a minimum, provided with $5 million of limits per each occurrence.

11. Since the Policy's definition of "occurrence" is ambiguous and Oxford's interpretation is reasonable, Oxford's interpretation prevails.

12. Insurer's "single occurrence" position has hampered Oxford's ability to move forward with potential settlement negotiations in the Underlying Suits. Accordingly, Oxford brings this action seeking judicial resolution of this actual controversy between itself and Insurer.

## GENERAL ALLEGATIONS

### The Policy

13. Insurer issued Policy No. PC 000062319 to Oxford for the period of July 1, 2021 to July 1, 2022. The Policy incorporates numerous different coverage forms into a single document. A true and correct copy of the Policy is attached as **Exhibit A**.

3

14. The Policy's Commercial General Liability Declaration contains limits of $1 million per occurrence under Coverage A (Bodily Injury/Property Damage) with No Annual Aggregate limit and no deductible. Ex. A at 8, 28.

15. Coverage A obligates Insurer to "pay those sums that the **Member** [Oxford] becomes legally obligated to pay as damages because of **bodily injury** . . . to which this coverage applies."[1] *Id.* at 183. Further, Insurer has "the right and duty to defend the **Member** [Oxford] against any suit seeking damages for **bodily injury** . . . to which this coverage applies." *Id.*

16. The Policy "applies" to "**bodily injury** . . . caused by an **occurrence** that takes place in the **coverage territory**" and "during the coverage period." *Id.*

17. The Policy's Commercial General Liability Coverage Form defines "bodily injury" as "bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time." *Id.* at 210.

18. The Policy's Commercial General Liability Coverage Form defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 213.

19. As defined, "occurrence" is ambiguous.

20. Insurer drafted the Policy, including drafting Coverage A and the definition of "occurrence."

21. The Policy's Excess Liability Declaration contains limits of $4 million per occurrence of excess coverage for Commercial General Liability Coverage A (Bodily Injury/Property Damage) with No Annual Aggregate limit and no deductible. *Id.* at 9, 29.

---

[1] Bolded terms are defined in the Policy.

4

22. Under the Policy's Excess Liability Coverage Form, Insurer agrees to "pay those sums in excess of the limits shown for the Schedule of **Underlying Coverage** in the Excess Liability Declarations that **you** [Oxford] become legally obligated to pay as damages because of injury to which this coverage applies, provided that the **Underlying Coverage** also applies, or would apply but for the exhaustion of its applicable Limits of Coverage." *Id.* at 172. The Excess Liability Coverage Form "is subject to the same terms, conditions, agreements, exclusions and definitions as the **Underlying Coverage**" with specified exceptions not relevant here. *Id.*

23. With respect to defense, the Excess Liability Coverage Form provides as follows:

> **We** will have the right to participate in the defense of claims or suits against **you** seeking damages because of injury to which this coverage may apply. **We** will have a duty to defend such claims or suits when the applicable limit of coverage in the **Underlying Coverage** has been exhausted by payment of judgments, settlements and any cost or expense subject to such limit. **We** may, at our discretion, investigate and settle any claim or suit. Our right and duty to defend will end when the applicable limit shown in the Excess Liability Declarations has been exhausted by our payment of judgments or settlements."

*Id.*

24. The "Underlying Coverage" includes Commercial General Liability Coverage A as per the terms noted above.

### The Underlying Suits

25. On November 30, 2021, a 10th grade student at Oxford High School, E.C., opened fire in Oxford High School and shot one teacher and ten students, killing four of the students.

26. Nine days later, on December 9, 2021, underlying plaintiffs Jeffrey Franz and Brandy Franz filed the first of the Underlying Suits in the United States District Court for the Eastern District of Michigan, Case No. 2:21-cv-12871. The *Franz* Complaint and Demand for a Jury Trial is attached as **Exhibit B**. The *Franz* Complaint alleges that one of their minor children, R.F., was injured by a shot fired by E.C. and that another child, B.F., "narrowly escaped" being

5

shot and suffered emotional injuries by observing her sister and friends being shot. *See* Ex. B ¶¶ 92-93. The *Franz* Complaint alleges that Oxford and certain of its employees committed acts or omissions that led to and/or could have prevented their children's injuries and seeks damages regarding the same. *See generally* Ex. B. Further, the *Franz* Complaint seeks damages from Oxford under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging that Oxford had certain policies or practices that caused their children's injuries. *Id.* ¶¶ 133-146.

27. The *Franz* Complaint has since been amended multiple times. The operative Second Amended Complaint is attached as **Exhibit C**.

28. Following the *Franz* Complaint, additional Underlying Suits were filed in federal court as follows:

- *Asciutto, et al. v. Oxford Community School District, et al.*, E.D. Mich. Case No. 2:22-cv-10407, filed February 24, 2022, operative Amended Complaint attached as **Exhibit D**;

- *St. Juliana, et al. v. Oxford Community School District, et al.*, E.D. Mich. Case No. 2:22-cv-10805, filed April 14, 2022, operative Complaint attached as **Exhibit E**;

- *Myre, et al. v. Oxford Community School District, et al.*, E.D. Mich. Case No. 2:22-cv-11113, filed May 26, 2022, operative Complaint attached as **Exhibit F**;

- *Beausoleil v. Oxford Community School District, et al.*, E.D. Mich. Case No. 2:22-cv-11250, filed June 7, 2022, operative Complaint attached as **Exhibit G**;

- *Ossege v. Oxford Community School District, et al.*, E.D. Mich. Case No. 2:22-cv-11251, filed June 7, 2022, operative Complaint attached as **Exhibit H**;

- *G.J., et al. v. Oxford Community School District, et al.*, E.D. Mich. Case No. 22-cv-11360, filed June 17, 2022, which was later amended to become

6

a putative class action, operative Amended Class Action Complaint for Equitable and Injunctive Relief attached as **Exhibit I**;[2]

- *Cunningham v. Oxford Community School District, et al.*, E.D. Mich. Case No. 2:22-cv-11398, filed June 23, 2022, operative Complaint attached as **Exhibit J**;

- *Mueller, et al. v. Oxford Community School District, et al.*, E.D. Mich. Case No. 2:22-cv-11448, filed June 28, 2022, operative Amended Complaint attached as **Exhibit K**; and

- *Watson, et al. v. Oxford Community School District, et al.*, E.D. Mich. Case No. 2:22-cv-11959, filed August 21, 2022, operative Complaint attached as **Exhibit L**.

29. The Underlying Suits each allege that the specific plaintiff(s) suffered individual injuries from different shots fired by E.C. or emotional distress from living through the shooting, as shown below:

- *Ossege*: "Plaintiff suffered a 'through and through' gunshot wound to the right shoulder. She suffered a spinal cord injury, a broken clavicle, and two broken ribs" Ex. F ¶ 104.

- *Asciutto*: "He [E.C] first shot a student inside the bathroom, shot at several female OHS students in the hallway outside the bathroom, and then he turned his gun toward [J.A.] and [M.V.], who were walking down the hallway, away from the shooter. Noticing them, EC shot at both: he struck [J.A.] in the left buttock and missed [M.V.], who saw several bullets strike into the hallway wall." Ex. D ¶¶ 93-94.

- *Beausoleil*: "E.C. began to shoot at any student he saw, hell-bent on causing as much destruction as possible . . . When he was done with the rampage, three students were dead (a fourth student would die from his wounds the next day), including [M.B.] . . ." Ex. G ¶¶ 67-68.

- *Cunningham*: "E.C. began to shoot at any student he saw, hell-bent on causing as much destruction as possible . . . P.A., standing less than ten feet from E.C. as he emerged from the boys' restroom, was shot in the neck, with another bullet grazing her cheek." Ex. J ¶¶ 66-67.

---

[2] This case has been dismissed and is not pending on appeal.

7

- *Mueller*: "E.C. first shot a student inside the bathroom, then emerged and began shooting students in the hallway. E.C. would ultimately kill four students, and seriously injure seven others, including E.M., who was shot in the face." Ex. K ¶¶ 180-181.

30. The Underlying Suits filed in federal court have been treated as "related" by the court. Over the past two years, the court has made several rulings on motions, including on May 12, 2023, issuing an Opinion and Order granting in part and denying in part Oxford and its co-defendants' Motion for Judgment on the Pleadings. *See Franz v. Oxford Cmty. Sch. Dist.*, No. 21-CV-12871, 2023 WL 3431223 (E.D. Mich. May 12, 2023).

31. The parties in the federal Underlying Suits have filed cross-appeals, which have been consolidated and are pending before the United States Court of Appeals for the Sixth Circuit as Case Nos. 23-1483, 23-1484, 23-1487, 23-1489, 23-1490, 23-1491, 23-1492, 23-1493, 23-1496, 23-1560, 23-1561, 23-1563, 23-1564, 23-1565.

32. The Underlying Suits additionally include the following actions filed in Oakland County Circuit Court: *Myre, et al. v. Oxford Community School District, et al.*, No. 2022-192262-NO; *Watson, et al. v. Oxford Community School District, et al.*, No. 2022-195663-NO; *Poblette v. Throne, et al.*, No. 2022-194891-NO; and *Feltz v. Throne, et al.*, No. 2022-196849-NO.[3]

33. There have been rulings made in the state court Underlying Suits as well. The *Myre* and *Watson* state court Underlying Suits are pending before the Michigan Court of Appeals as Case Nos. 366192 and 365425.

34. Oxford has denied all liability in the Underlying Suits.

Factual Developments Concerning the Shooting Relevant to the Occurrence Dispute

35. On December 1, 2021, the shooter, E.C., was indicted by the State of Michigan and

---

[3] The *Poblette* and *Feltz* state court Underlying Suits have been dismissed and are not pending on appeal.

8

charged with 24 criminal counts, including terrorism causing death, first degree murder, assault with intent to murder, and possession of a firearm in the commission of a felony. A copy of the Complaint is attached as **Exhibit M**.

36. Notably, the criminal Complaint against E.C. charged each injured individual as a separate offense.

37. On October 24, 2022, E.C. pleaded guilty to the Complaint.

38. Following the shooting, Oxford authorized an independent investigation to learn what led up to this tragedy, what happened immediately prior to and on the day of the shooting, and exactly how the school responded that day and in the days that followed. Oxford's investigative counsel, Varnum LLP, hired outside firm Guidepost Solutions LLC ("Guidepost") to assist with the independent investigation and prepare reports, which have been made public.

39. The first Guidepost report, released in May 2022, addresses Oxford's current school safety and security policies and practices.

40. The second Guidepost report, released in late October 2023, is over 500 pages and investigates the events before, during, and after shooting in detail. The report includes a minute-by-minute narrative of the shooting. The report notes, among other things:

- During the first seven seconds of the shooting, the shooter fired at least 14 times in the 200 short hallway, injuring several individuals and killing two of them;

- The shooter then proceeded around the corner to the long 200 corridor, where he fired upwards of 18 additional shots, killing one student and injuring two others;

- The shooter then entered a boys bathroom, where he shot and killed another student.

<u>The Insurer's Defense of the Underlying Suits and Involvement In Mediation</u>

41. Starting with the filing of the *Franz* Complaint, Oxford provided Insurer with timely notice of the Underlying Suits.

9

42. Throughout 2022, Insurer sent Oxford of series of letters acknowledging that the Underlying Suits trigger the Policy and agreeing to provide "a full defense" to the District and other insured defendants in the Underlying Suits.

43. Insurer appointed counsel to defend Oxford and other insureds the Underlying Suits. That defense continues as of today.

44. In its coverage letters, Insurer stated: "Your Commercial General Liability Coverage has policy limits of $1,000,000. Your excess policy provide additional limits in the amount of $4,000,000 for all claims relating to this event." In other words, Insurer's letters did not recognize that the Policy's limits are per "occurrence" and, in so doing, the Insurer established its position that Underlying Suits alleged only one "occurrence."

45. Insurer has since affirmed that position to the District.

46. In fall 2023, the parties in the Underlying Suits agreed to participate in multiple confidential mediations in an effort to reach a global resolution of all claims.

47. Insurer participated in the mediation by sending a representative and, eventually, involving separate outside coverage counsel.

48. The mediations did not result in a settlement and have been terminated.

49. The mediations failed in part because Insurer was unwilling to negotiate above a single "occurrence" primary and excess Policy limit and would not reconsider its coverage position.

50. Accordingly, Oxford has been left with no choice but to file this action.

<u>The Underlying Suits Are Indisputably Covered Under the Policy and Involve Multiple Occurrences</u>

51. There is no dispute that Oxford is a "Member" under the Policy.

10

52. There is no dispute that the Underlying Suits trigger Coverage A of the General Liability Coverage Form and any follow form Excess Liability coverage in the Policy by virtue of seeking damages against Oxford because of alleged "bodily injury" that took place in the "coverage territory" and during the coverage period.

53. Courts in Michigan and elsewhere have found that the Policy's definition of "occurrence"—"an accident, including continuous or repeated exposure to substantially the same general harmful conditions"—and substantially similar definitions are ambiguous and susceptible to multiple reasonable interpretations.

54. In other words, it is reasonable for Oxford to interpret the definition of "occurrence" as each shot being fired by E.C. that led to an injury as being its own independent "accident."

55. Alternatively, it is reasonable for Oxford to interpret the definition of "occurrence" to mean that each alleged wrongful act or omission by Oxford or its employees (and/or each alleged Oxford policy or practice) that purportedly contributed to and/or failed to prevent the shooting was its own "occurrence" under the Policy.

56. Oxford has complied in all material respects with the conditions and requirements of the Policy, or such conditions and requirements have been waived or their satisfaction otherwise excused by operation of law or by the conduct of Insurer.

57. No exclusions or limitations in the Policy apply here.

58. Therefore, pursuant to the terms and conditions of the Policy, Insurer is obligated to indemnify Oxford and make available for settlement more than one "occurrence" worth of the Policy's limits.

## COUNT ONE —DECLARATORY JUDGMENT

59.     Oxford realleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

60.     Oxford and Insurer entered a legally binding written contract when Insurer issued the Policy.

61.     An actual controversy exists between Oxford and Insurer in connection with which the Court is hereby requested to declare the rights and other legal relations of Oxford and Insurer under the Policy.

62.     As addressed above, Insurer has taken the position that the Underlying Suits involve a single "occurrence" under the Policy and, accordingly, will not make available more than a single "occurrence" of Policy limits to reasonably settle the Underlying Suits.

63.     Oxford is entitled to a declaratory judgment confirming that the Underlying Suits seek damages for "bodily injury" caused by multiple "occurrences" under the Policy—including, *e.g.*, that each individual shot fired by E.C. that caused an injury to an underlying plaintiff was its own "occurrence"—such that Oxford (1) is not limited to $5 million in seeking to reasonably settle the Underlying Suits, or in the event that the Underlying Suits proceed to trial and Oxford receives an adverse monetary judgment; and (2) is, at a minimum, provided with $5 million of limits per occurrence.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Oxford Community Schools prays for the following relief:

A.      Entry of a declaratory judgment pursuant to Count One adjudicating the rights of the parties under the Policy and declaring that "occurrence" as used in the Policy and as applied to the Underlying Suits means either (1) each shot fired by E.C. that led to a bodily injury, or alternatively (2) each alleged wrongful act or omission by Oxford or its employees (and/or each alleged Oxford policy or practice) that

12

purportedly contributed to and/or failed to prevent the shooting was its own "occurrence" under the Policy.

B. Enter a judgment awarding Oxford its costs of court and any other and further relief to which it may justly be entitled.

## JURY DEMAND

Oxford hereby demands a trial by jury of all issues so triable that are raised herein or which may be raised in this action.

Respectfully submitted,

By: /s/ David Z. Adler

TAFT STETTINIUS & HOLLISTER LLP
David Z. Adler (P71227)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
dadler@taftlaw.com

PERKINS COIE LLP
James M. Davis (*pro hac vice forthcoming*)
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel. (206) 359-8000
JamesDavis@perkinscoie.com

Bradley Dlatt (*pro hac vice forthcoming*)
110 North Wacker Drive, Suite 3400
Chicago, IL 60606-1511
Tel. (312) 324-8400

BDlatt@perkinscoie.com

13